## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GLOVIS ALABAMA, LLC,** | ) | |
| **Plaintiff/Counter-defendant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 18-00521-KD-N** |
| | ) | |
| **RICHWAY TRANSPORTATION SERVICES** | ) | |
| **INC.,** | ) | |
| **Defendant/Counter-claimant.** | ) | |
| | ) | |
| **RICHARDSON ALABAMA EQUIPMENT** | ) | |
| **LEASING, INC.,** | ) | |
| **Intervenor Defendant.** | ) | |

### ORDER

This matter is before the Court on: 1) Plaintiff Glovis Alabama, LLC (Glovis)' motion for partial summary judgment on its breach of contract claim (Doc. 88); 2) Richway's cross-motion for partial summary judgment as to tax charges and attorneys' fees (Doc. 93); and 3) Richway and Intervenor Defendant Richardson Alabama Equipment Leasing, Inc. (RAEL)'s motion for partial summary judgment as to Glovis' claim of conversion and fraud (Doc. 102).

### I.   Procedural Background

On November 12, 2018, Plaintiff Glovis Alabama, LLC (Glovis) initiated this action against Richway Transportation Services, Inc. (Richway) in the Circuit Court of Mobile County, Alabama (*Glovis Alabama, LLC v. Richway Transp. Servs., Inc.,* 02-CV-2018-902866).  (Doc. 1-1).  Based on Richway's indebtedness under a contract between Glovis and Richway for leased equipment (trailers), Glovis alleged breach of lease, replevin and unjust enrichment, and sought an order for the release of property and for monetary damages ($370,506), pre/post judgment interest, attorneys' fees, and costs.

On December 14, 2018, Richway removed this case on the basis of federal diversity subject matter jurisdiction.  (Doc. 1).  On December 21, 2018, Richway answered and counterclaimed against Glovis for

1

claims stemming from a rail and transportation services contract.  (Doc. 2).  Specifically, Richway alleged counterclaims against Glovis for: "suit on sworn account pursuant to Ala. Code § 12-21-111," breach of contract, promissory estoppel, *quantum meruit*, and fraud.  (Doc. 2).  Richway seeks $474,524.65 in actual and liquidated damages, pre/post judgment interest, attorneys' fees, and costs.  (Id.)  Richway denies that it is in default and/or that it owed any payments to Glovis under the Glovis-Richway lease, "because such amounts were deducted" from Glovis' "outstanding payables owed to Richway."

On April 30, 2019, Richway moved to amend its answer/counterclaim, "to identify RAEL as the owner" of the equipment at issue (versus Glovis) because: "[r]eview of State of Alabama Certificates of Title confirm the majority -- and likely all -- of the Equipment is owned by...[RAEL]….which is not a party to the Lease Agreement…Alabama Department of Revenue license and registration receipts similarly identify RAEL as the owner…."  (Doc. 33 at 3-4).  Richway further sought to delete its prior assertions that the lease agreement was a finance contract for Richway's purchase of the equipment, and to add that RAEL is the proper title holder and owner of the equipment.  (Id. at 4).  While given the opportunity to respond (Doc. 34), Glovis did not.  Richway's motion was granted (Doc. 36), and Richway filed its amended answer/counterclaims.  (Doc. 37).

On May 24, 2019, Richardson Alabama Equipment Leasing, Inc. (RAEL) filed a Rule 24(a)(2) motion to intervene, supported by the Affidavit of RAEL representative Nolan Richardson.  (Doc. 35; Doc. 35-1 (Aff. N.Richardson)).  With same, RAEL asserted that it, not Glovis, is the true owner of the equipment, and sought intervention to protect its rights.  Specifically, per RAEL:

> ….Plaintiff…neither owns nor maintains any possessory interest in the Equipment…. The Equipment was acquired by Intervenor directly from Transcraft Corporation in June and July of 2016, and thereafter registered and titled in Intervenor's name. [ ] The Equipment has remained under Intervenor's ownership and control since it was acquired. [ ]
>
> …Plaintiff does not maintain any legal ownership, possessory, or security interest in any of the Equipment at issue. Intervenor has not transferred, granted, or otherwise conferred any ownership, possessory, or security interest in the Equipment to Plaintiff. [ ] Intervenor

and Plaintiff have not entered into *any* agreements with respect to the Equipment. [ ] Plaintiff….has never even been in possession of the Equipment…

…Plaintiff contends that is it has contractual and legal rights to immediate possession of the Equipment…despite a complete and utter absence of same. Plaintiff contends it may repossess, sell, or release the Equipment, despite not having any legal ownership or possessory interest in any of the Equipment in issue….Plaintiff may not "repossess" property that it never possessed to begin with, and cannot "sell" what it does not own.

….Intervenor…maintains the only legal ownership and possessory interest in the Equipment…not Plaintiff....pursuant to State of Alabama Certificates of Title and Alabama Department of Revenue license and registration receipts…..

(Doc. 35 at 3-4 (footnotes omitted, emphasis in original)).  Thus, the Richardson Affidavit asserts that in June/July 2016, RAEL acquired 12 trailers "directly from Transcraft[]" which have "remained under RAEL's ownership and subject to RAEL's control[,] "Glovis had never been in possession" of the trailers, and "RAEL has not transferred, granted or otherwise conferred any ownership, possessory, or security interest" in the trailers to Glovis.  (Doc. 35-1 at 2 (Aff. N.Richardson)).

Glovis opposed the intervention, contending Richway is acting "surreptitious[ly]" and in bad faith with RAEL, to take Glovis' equipment without payment, when RAEL is not a necessary party.  (Doc. 40). Glovis argued that RAEL "could not logically be the owner" of the equipment per Richway's own assertions, and that RAEL and Richway are related entities working together to avoid payment to Glovis.

This Court granted RAEL's motion to intervene, concluding (in part):

[T]he Court finds that RAEL has sufficiently asserted an interest in the equipment which is the subject of the action; that it is so situated that disposition of the action, as a practical matter, may impede or impair its ability to protect its interest; and that its interest is represented inadequately by the existing parties in the litigation.  Indeed, RAEL's assertion is supported by its evidentiary submissions (Doc. 35-1 (including Affidavit and certificates of title)), which support its claim to ownership in the equipment.  ..... "Under any reasonable construction," RAEL has sufficiently alleged a direct, substantial and legally protectable interest in the equipment.  Id.  RAEL's interest does not appear "speculative, indirect or ancillary" given the Affidavit and certificates of title to the equipment submitted to the Court.  As such, the facts and circumstances satisfy the protectable interest requirement and support the conclusion that RAEL should have an opportunity to intervene.  Id.  Moreover, RAEL's claimed interest -- ownership of the equipment at issue -- would necessarily be inadequately represented by the existing parties (Glovis and Richway) as purported non-owners of said equipment......

3

(Doc. 41).

Thereafter, Glovis filed an amended complaint against RAEL and Richway alleging: 1) breach of the lease agreement (contract) by Richway (Count I); 2) replevin against Richway (Count II); 3) unjust enrichment against Richway and RAEL (Count III); 4) conversion against Richway and RAEL (Count IV); and 5) fraud against Richway and RAEL (Count V).  (Doc. 58.)  Richway answered and filed counterclaims against Glovis again alleging: 1) suit on sworn account (Ala. Code § 12-21-111); 2) breach of contract (rail/trucking services); 3) promissory estoppel; 4) *quantum meruit*; and 5) fraud.  (Doc. 69 at 12-17).  Through their answers, both Richway and RAEL deny the following: that Glovis is the Lessor under the contract; that the contract in question is a lease agreement; and that Glovis purchased the trailers from Transcraft, asserting instead that Glovis "financed RAEL's purchase and acquisition" of the trailers and Glovis "was aware of and consented to the issuance of the MSO's[1] in the name of RAEL."  (Doc. 69 at 2-3, 5; Doc. 70 at 2, 5).

## II.    **Findings of Fact**[2]

---

[1] MSO is shorthand for the manufacturer's statement or origin.  The MSO describes the make, model, serial number of the equipment and is the document to obtain titles, registration, taxes etc. (Doc. 102-2 at 9 (Dep. Shukla at 36)).  The entity named in the MSOs is the entity able to apply for a title to the equipment listed in same.  (Doc. 102-3 at 6 (Dep. Wells at 23)).

[2] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000). For purposes of this Order, the Court only sets forth facts relevant to the specific claims upon which the motions are based (i.e., not all claims/counterclaims). Moreover, the parties submitted voluminous records, yet only cite to and rely on small portions of same (e.g., Glovis' Reply (Doc. 99) cites only 14 pages of Shukla's deposition (pp. 101-102, 110-116, 130-134) yet Glovis submitted 185 pages of his deposition transcript). The Court has thus endeavored to limit its review to the cited materials when possible (though in some instances review beyond the cited pages has been necessary to understand the facts). As noted in July v. Board of Water and Sewer Commr. of City of Mobile, 2012 WL 5966637 at n. 10 (S.D. Ala. Nov. 29, 2012): "[t]he Court cannot and will not make a party's summary judgment argument for it, based on record facts that the party has not cited.... *See* Rule 56(c), Fed.R.Civ.P. .... the court 'need consider only the cited materials[]'").

An equipment lease agreement between Glovis and Richway -- the Glovis-Richway lease, is the genesis of this case. Specifically, from April 21-May 18, 2016, Glovis and Richway discussed obtaining trailers for Richway's use in the transportation services that it provided to Glovis. (Doc. 102-1 at 36 (Supp. Aff. Kim at 2)). According to Glovis, it agreed to purchase the trailers and lease them to Richway on a "rent to own" basis. (Id.) Richway contends that the agreement was a financing agreement not a lease.[3]

On June 23, 2016,[4] Glovis (Lessor) and Richway (Lessee) executed an equipment lease agreement (the Glovis-Richway lease) for 12 trailers. (Doc. 88-1 at 7-19; Doc. 102-2 at 5, 7-8 (Dep. Shukla at 18, 27, 33); Doc. 103-1 at 10 (Dep. Kim at 149)). The lease provides that Richway will pay Glovis $10,930/month for 48 months and upon the 48th payment Richway would own the trailers with no obligation to return them. (Id.; Doc. 107-1 at 5 (Dep. Kim at 91); Doc. 92-2 at 15-16 (Dep. Kim at 41-42). Glovis then arranged to pay $451,436.32[5] for 12 trailers from non-party Transcraft (also referenced as Wabash National/Benson),[6] directed that the trailers be delivered to Richway, and paid $24,920.64 in state sales taxes for the purchase. (Doc. 106-5 at 6 (Dep. N.Richardson at 35 ("Glovis bought the trailers, yes[]"); Doc. 88-2 at 3 (Dep. Shukla[7] at 15 ("[i]t was paid by Glovis[]"); Doc. 92-2 at 19 (Dep. Kim at

---

3  Shukla (Richway) claims that there was an "arrangement" with Glovis that the lease agreement was a finance agreement "so MSOs and titles will be the responsibility of" RAEL, hence the need for the MSOs to be issued in the name of RAEL. (Doc. 102-2 at 10 (Dep. Shukla at 39)). Per Shukla, his understanding was that RAEL bought the trailers and Glovis financed them -- "it may not have been in this [lease agreement] document, but that's how we did it, and we notified them that this is how we are going to get the titles." (Doc. 102-2 at 8 (Dep. Shukla at 30-31)).

4 Though signed on June 23, 2016 by Glovis and on October 20, 2016 by Richway, (Doc. 102-1 at 66), the parties immediately began acting pursuant to the terms of the lease as though same were in effect on June 23, 2016.

5 Richway alleges in briefing this is an impossibility as Glovis was not an approved dealer or customer of Transcraft and does not appear on any of the purchase orders, invoices, etc. for the trailers. (Doc. 92 at 12).

6  The parties indicate that these are all the same company. (Doc. 103-1 at 4 (Dep. Kim at 31)). For ease of reference, the Court will refer to these entities simply as Transcraft.

7 Krishnakant Shukla (Krish Shukla) is an independent accountant who works as a contract CFO controller for Richway. (Doc. 99-1 at 7 (Dep. Shukla at 6)).

53); (Doc. 102-1 at 36 (Supp. Aff. Kim at 2 (and Exs. C-D thereto); Doc. 102 at 60-61 (5/28/19 Glovis'

payment); Doc. 102-1 at 118 (Glovis' payments 8/30/16, 10/18/16, 1/10/17, 2/7/17).   RAEL did not pay

Transcraft for the trailers.  (Doc. 106-5 at 8 (Dep. N.Richardson Errata)).  Per Kim (Glovis), RAEL had

nothing to do with the purchase of the trailers.  (Doc. 92-2 at 19 (Dep. Kim at 53)).

　　　Glovis arranged for the trailers to be delivered from Transcraft to Richway at different times per

the lease (delivery/payment schedules tied to each trailer), after which Glovis would pay Transcraft.  (Doc.

103-1 at 5 (Dep. Kim at 55); Doc. 102-1 at 37 (Supp. Aff. Kim at 3); (Doc. 88-1 at 3-4 (Aff. Kim at 2-3,

and Exs. A-D thereto)).  Some invoices were issued in the name of the Richardson Companies (which

includes Richway and RAEL) and RAEL, but there is no dispute that only Glovis paid the invoices.  (Doc.

92-2 at 27, 30-33 (Dep. Kim at 116, 134-137)).

　　　The Glovis-Richway lease (Doc. 102-1 at 62-74) is between Glovis and Richway only.  The lease

is an agreement for Richway to lease "certain tangible property" from Glovis.  (Doc. 102-1 at 64). The

lease clearly provides that Glovis owns the trailers and Richway has no rights, title, or interest therein

other than specified in the lease:

> Ownership.
> The Equipment is, and shall at all times be and remain, the sole and exclusive property of
> Lessor; and the Lessee shall have no right, title, or interest therein or thereto except as
> expressly set forth in this Lease.

(Doc. 102-1 at 65; Doc. 102-2 at 7 (Dep. Shukla at 28-29)).

　　　Regarding default, the lease provides:

> Default.
> If Lessee fails to pay any rent or other amount herein provided within thirty (30) days after
> the same is due and payable, or if Lessee fails to observe, keep or perform any other
> provision of this Lease required to be observed, kept or performed by Lessee, Lessor shall
> have the right to exercise any one or more of the following remedies:
>
> 　　• To declare the entire amount of rent hereunder immediately due and payable
> 　　without notice or demand to Lessee.
> 　　• To sue for and recover all rents, and other payments, then accrued or thereafter
> 　　accruing.

6

- To take possession of the Equipment, without demand or notice, wherever same may be located, without any court order or other process of law. Lessee hereby waives any and all damages occasioned by such taking of possession.
- To terminate this Lease.
- To pursue any other remedy at law or in equity.

Notwithstanding any repossession or any other action which Lessor may take, Lessee shall be and remain liable for the full performance of all obligations on the part of the Lessee to be performed under this lease. All of Lessor's remedies are cumulative, and may be exercised concurrently or separately.

(Doc. 102-1 at 65; Doc. 102-2 at 7 (Dep. Shukla at 27-28); Doc. 88-1 at 4 (Aff. Kim at 3)).

Moreover the lease prohibits Richway's assignment of the lease or interests in the trailers without

Glovis' prior written consent:

Assignment.
Lessee shall not assign this Lease or its Interest in the Equipment without the prior written consent of Lessor.

(Doc. 102-1 at 66; Doc. 102-2 at 8 (Dep. Shukla at 33)).

The lease also contains a merger clause:

Entire Agreement.
This instrument constitutes the entire agreement between the parties on the subject matter hereof and it shall not be amended, altered or changed except by a further writing signed by the parties hereto.

(Doc. 102-1 at 65).

And the lease provides that Richway (Lessee) reports, pays, and discharges all taxes, licenses, fees, etc. including sales use taxes "whether or not the same shall be assessed against or in the name of Lessor [Glovis]..." (Doc. 102-1 at 64; Doc. 103-1 at 16 (Dep. Kim at 182)).

In June 2016, pursuant to Exhibit A-1 of the lease, Glovis arranged for two (2) trailers to be delivered to Richway for $1,434/month, beginning in June 2016 and ending in May 2020.  On June 27, 2016, Shane Wells (Transcraft/Wabash)[8] contacted Yun Jae Kim (Glovis) via email and cc'd Mike

---

[8] The Transcraft corporate representative.  (Doc. 92-1 at 6 (Dep. Wells at 6)).

Richardson (Richway) and Joanie Carr (Transcraft) regarding Glovis remitting payment to Transcraft for five (5) trailers for their release to Mike Richardson (Richway).  (Doc. 102-3 at 89).  In June 2016, Richway began making monthly lease payments to Glovis for trailers.

On July 13, 2016, Carr (Transcraft) emailed Shukla (Richway) and Wanda Calhoun (Transcraft) noting that Transcraft had received the "MSOs" but that she did not see a note indicating "what they should read. What name and address do you want on them?" (Doc. 102-1 at 77; Doc. 102-2 at 9 (Dep. Shukla at 35-37)).  No representative of Glovis was included on this email.  There is also no explanation in the record as to why Transcraft contacted Richway for this information, rather than Glovis.  On July 14, 2016, Transcraft issued certificate of origins for the trailers in the name of non-contracting party RAEL, as the Distributor, stating the property "is transferred" to RAEL.  (Doc. 102-1 at 130, 132, 134, 136, 138, 156, 158, 161).  On July 13, 2016, Shukla (Richway) emailed Transcraft requesting that it "re-issue the MSO" in RAEL's name.  (Doc. 102-1 at 76; Doc. 102-2 at 9 (Dep. Shukla at 36-37)).  Again, no representative of Glovis was included on this email.

On August 1, 2016, Richway (Richardson) and Glovis (Kim and Garvin) met to discuss the payment process for Glovis leasing the 12 trailers to Richway.  (Doc. 102-1 at 81-82 (Meeting Minutes). The minutes state that Richway agreed that Glovis has the right to deduct or write-off any monthly lease receivables from payables for Richway (for Transportation services). (Id.)

From August 30, 2016 to September 27, 2016, Transcraft (via Carr) communicated with Mike Kim (Glovis) via emails regarding payments and invoices on the trailers.  (Doc. 102-5 at 1-8) The evidence indicates that the only possible notice to Glovis of the MSOs being issued in RAEL's name came in the form of a September 27, 2016 email; namely, that Leslie Garvin (with Glovis) was cc'd on an email string inquiry about a different issue -- payments and providing invoices for the trailers (with the email string relating to MSOs embedded at the end of the email discussion chain but not in the subject line).  However, there is no indication that Garvin (Glovis) was asked to approve how the MSOs were issued or that the

MSOs were brought to her attention at that time.  (Doc. 102-2 at 10 (Dep. Shukla at 38-39)).  Shukla contends that this email to Garvin, was notice to Glovis that the trailers would be titled in RAEL's name.  (Id. at 8 (Dep. Shukla at 31-32)).

Per Kim, Glovis did not understand the significance of MSOs referenced within an email chain discussion when the email was regarding a separate issue.  (Doc. 102-1 at 11-12 (Dep. Kim at 63-64, 68)).  Kim explains that "every week we have like one thousand invoices from everywhere[]" and the invoices being submitted to Glovis' accounting department would not have notified Kim that RAEL was having the trailers issued in its name.  (Doc. 92-2 at 34-35 (Dep. Kim at 142, 147)).

In October 2016, per Exhibit B-1 of the Lease, an additional four (4) trailers were delivered to Richway for $2,868/month, beginning in October 2016 and ending in September 2020.  Richway then, unbeknownst to Glovis, executed a lease with RAEL for the same 12 trailers that are the subject of the Glovis-Richway lease.  On October 1, 2016, RAEL (naming itself as Lessor) began leasing the trailers to Richway (named as Lessee), by executing a series of "internal" equipment lease agreements (with no consideration exchanged for same) "to let them operate[]". (Doc. 107-2 at 9 (Dep. N.Richardson at 27); Doc. 99-1 at 19-20, 26-28, 71-72 (Dep. Shukla at 18-19, 25-27, 70-71); Doc. 99-1 at 214-218 (1/1/17-12/31/17 lease), 219-223 (4/1/07-3/31/07 lease), 224-228 (10/1/16 lease)).  The only explanation of record for RAEL and/or Richway's unilateral action is given by Shukla: "that is how the structure is set up on the tax attorneys and CPA's advice for a long time....[RAEL] showed it as their equipment and created a lease agreement between Richway......and....[RAEL] so they can operate those equipment."  (Doc. 99-1 at 19-20 (Dep. Shukla at 18-19)).  This was done without Glovis' permission or knowledge. (Doc. 99-1 at 29-30, 72-74 (Dep. Shukla at 28-29, 71-73)).

Without any knowledge of Richway and RAEL's actions, Glovis continued performing under the Glovis-Richway lease.  In December 2016, per Exhibit C-1 of the Lease, four (4) additional trailers were delivered to Richway for $4,332/month, beginning in December 2016 and ending in November 2020.  In

9

January 2017, per Exhibit D-1 of the Lease, two (2) additional trailers were delivered to Richway for $2,296/month, beginning in January 2017 and ending in December 2020.  Glovis billed Richway via four (4) invoices per the delivery dates.

Glovis collected sales tax on each Richway payment and remitted that tax to the relevant taxing authorities for state, county, and city sales taxes.  (Doc. 101-1 at 3 (Decltn. Leng)).[9]  Taxes were noted on Glovis' invoices through January 2018, and the amounts were paid to the State of Alabama by Glovis. Sales tax was included on invoices Glovis issued to Richway from February 2018-April 2020.  (Id.) Richway has not paid the invoices from February 2018-April 2020.

In March 2017, Glovis first became aware that the trailers' titles had been issued in non-contracting party RAEL's name.  Per Kim, he never saw a reference to RAEL before then.  (Doc. 92-2 at 19 (Dep. Kim at 53)).  On March 3, 2017, Kim (Glovis) emailed Transcraft: "the company must change on Certificate of Origin....Glovis purchased the units but it show[s]...RAEL....the letter should show 'Glovis Alabama LLC.' Please reissue the certificate or origin....." (Doc. 102-1 at 160).  Subsequent Kim (Glovis) - Transcraft emails that day indicate the originals were sent to Mike Richardson, which would need to be returned before replacements could be provided.  (Doc. 102-1 at 159). Kim (Glovis) contacted Mike Richardson (Richway) to have them correct the titling error.  (Doc. 102-1 at 38 (Supp. Aff. Kim at 4)). Kim (Glovis) called Shukla (Richway) to explain the title should be in Glovis' name, and  Shukla indicated that he understood; per Kim, Shukla told him he would change the title and list Glovis as the owner.  (Doc. 102-1 at 11, 12 (Dep. Kim at 64-65, 68); Doc. 106-1 at 9 (Dep. Shukla at 193)).  Kim alerted Mike Richardson (Richway) that the title in RAEL's name was a problem based on the lease terms specifying that Glovis has ownership of the trailers and Richway could not have any ownership until they paid the

---

9 Leng is Glovis' Accounting Manager.

full lease amount.  (Doc. 102-1 at 12, 30 (Dep. Kim at 68-69, 172)).  Glovis then began efforts to correct the title to the trailers.  (Id. at 13 (Dep. Kim at 70-71)).  These efforts include:

- 4/20/2017 email from Mike Kim to Shukla: "Per conversation, please reissue title for 12 flatbeds.  I do not know why Transcraft issued MSO as Richway [Kim meant RAEL]. It should be Glovis Alabama as Lien Holder. Please reprocess and let me know status."

- 4/21/2017 email from Mike Kim to Shukla: "Glovis Alabama should be purchaser not lienholder since we are not bank.  The Title should be on our name. We will charge sales tax until contract term ends. Please double check and let me know!'

- 4/25/2017 email from Mike Kim to Shukla cc'd to Mike Richardson:  "The attached exempts us from Sales Tax on equipment we purchase for resale.  We already paid sales tax to State of Alabama. Please change title on our name."

- 6/20/2017 email from Mike Kim to Shukla cc'd to Mike Richardson:  "Once you change title on our name, please let me know ASAP. Our CFO is asking the title."

- 9/15/2017 email from Mike Kim to Shukla cc'd to Mike Richardson: "Please update me on Title issue. I need to report the status to CFO."

- 10/20/17 email from Mike Kim to Shukla: "Krish, per our conversation, please reissue title for twelve flatbeds."

(Doc. 102-1 at 39 (Supp. Aff. Kim at 5); Doc. 102-1 at 97-100 (emails); Doc. 92-2 at 41-42, 46 (Dep. Kim at 179-180, 188)).

Shukla (Richway) did not respond in writing to Kim's emails but instead called Kim assuring that changes to the title were being made and title would be reissued in Glovis' name.  (Doc. 102-1 at 40 (Supp. Aff. Kim at 6); Doc. 102-1 at 13 (Dep. Kim at 72-73); Doc. 106-1 at 9 (Dep. Kim at 193)).  On April 20, 2017, Shukla suggested adding Glovis as a lienholder to RAEL's titles to the trailers and Glovis initially said yes, but the next day reconsidered and asserted that Glovis had to be the listed title owner per the Glovis-Richway lease.  (Doc. 102-1 at 14-15, 32 (Dep. Kim at 76-77, 79, 184)).  However, no title changes were made.

In January 2018, Richway stopped making payments to Glovis due to disputes between the parties unrelated to the equipment lease. (Doc. 88-2 at 5 (Dep. Shukla at 66); Doc. 101-1 at 3 (Decltn. Leng at

2)).  Instead, Richway started setting-off the payments owed to Glovis from the receivables Glovis owed Richway for trucking services. (Doc. 105-1 at 3-4 (Dep. Shukla at 67-68)).[10]  Glovis did not give Richway permission to set-off payments due.  However, on June 14, 2018, per Glovis' letter to Richway (cc'd to Shukla), Glovis noted that it would deduct one month's payment to Richway for rail services to clear a month of lease equipment payment due by Richway.  (Doc. 92-8 at 1).  Glovis' memoranda stated: "[l]ease payment should be separated from the transportation service."  (Id.)

Glovis has declared Richway in default.  The default provision in the lease permits Glovis to accelerate the indebtedness and require Richway to pay all outstanding amounts remaining under the Lease.  Glovis contends Richway owes $372,555.50 under the Lease.  This amount represents outstanding payments from February 2018 to June 2020 (the end of the Lease term).

Per Glovis, Richway has paid $172,904.64 under the lease either through payments from Richway or set-off by Glovis. On August 29, 2018, Glovis demanded payment from Richway per the terms of the Glovis-Richway lease due to Richway's default.  (Doc. 106-2 at 2-3 (8/29/18 demand letter)).  On February 20, 2019, Glovis again demanded payment from Richway, as well as return of the leased equipment.  (Doc. 106-2 at 4-5 (2/20/19 demand letter).

## III.   <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c)(1)-(4) provides as follows:

**(c) Procedures.**

---

10 Per Shukla (Richway): "there is a balance from Glovis Alabama owed to Richway Transportation for trucking services, so there was a balance in accounts receivable and balance in payables, so I offset one against the other according to the accounting standard practices. And that's what we do all the time when we have the same party as our customer as well as our supplier/vendor."  However, Shukla (Richway) admitted that the Glovis-Richway lease "doesn't say that[]" to allow for such an offset or deduction.  (Doc. 105-1 at 3-4 (Dep. Shukla at 67-68)).  Shukla explains "I thought that was the understanding[]" even though he "didn't ask their [Glovis'] specific permission, no[]" to withhold payment as an offset.  (Doc. 105-1 at 4 (Dep. Shukla at 68)).

**(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

**(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992).

The Rule 56 standard is not affected by the filing of cross-motions.  See, e.g., Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005); Gerling Global Reins. Corp. of Am. v.

Gallagher, 267 F.3d 1228, 1233 (11th Cir. 2001).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted).  The Court is mindful that "[w]hen both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration."  Muzzy Prods., Corp. v. Sullivan Indus., Inc., 194 F.Supp.2d 1360, 1378 (N.D. Ga. 2002)).  The Court has reviewed the facts submitted and made its own examination of the record, to assess the separate motions for summary judgment.

## IV.   Conclusions of Law[11]

### A.   Glovis v. Richway Partial MSJs: Breach of Contract, Damages, Taxes, Attorneys' Fees/Costs

Glovis moves for partial summary judgment against Richway on its claims for breach of contract and damages (including attorneys' fees) under the terms of the equipment lease.  Specifically, Glovis seeks to enforce the acceleration clause in the Lease based on Richway's breach of contract, to collect the indebtedness owed.  Additionally, Glovis seeks a determination by this Court that Richway is liable for attorneys' fees/costs based on the lease, which provides that Glovis may recover: "costs, expenses ... including reasonable attorney's fees and costs, arising out of, connected with, or resulting from [Richway's] use of the Equipment, including without limitation the manufacture, selection, delivery, possession, use, operation, or return of the Equipment."  Glovis argues Richway is not permitted to set-off any debts against its outstanding/unpaid invoices.

---

11  As this is a diversity case, this Court applies the choice of law principles of Alabama, the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC, 572 F.3d 893, 895 n.1 (11th Cir. 2009) (citation omitted). For contract disputes, the law of the state where the contract was formed applies unless the contract contains a governing law provision. Cherokee Ins. Co. v. Sanches, 975 So.2d 287, 292 (Ala. 2007). The Glovis-Richway lease provides that it is governed by the laws of the State of Alabama.  Thus, the Court applies Alabama law.

In response, Richway argues that it "never breached" the lease due to non-payment because Glovis owes Richway a larger sum of money on a different contract for rail/trucking services, than Glovis seeks from Richway in lease payments. Accordingly, Richway claims that it set-off Glovis' unpaid invoices from the lease payments based on a "legal right" and "history between the parties permitting setoffs." (Doc. 92 at 2). Richway adds that the lease does not provide for recovery of attorneys' fees and neither does Alabama law. (Id.) Richway further argues that taxes are not recoverable by Glovis under the lease.

## 1.   Evidentiary Objections

Richway objects to the deposition of Krish Shukla, the Declaration of Freda Leng, and portions of the Affidavit of Mike Kim, submitted by Glovis in support of its motion for summary judgment. Pursuant to amended Rule 56 of the *Federal Rules of Civil Procedure*, namely Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The *Advisory Committee Notes* specify as follows:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.... If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed.R.Civ.P. 56, *Adv. Comm. Notes,* "Subdivision(c)" (2010 Amendments). As such, despite a party's objections, courts may consider hearsay on summary judgment so long as the statement can be reduced to admissible form at trial. See, e.g., *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1293–1294 (11th Cir.2012) (same); *Macuba v. Deboer,* 193 F.3d 1316, 1323 (11th Cir.1999) (same). Even unauthenticated or otherwise inadmissible evidence is properly considered on summary judgment so long as it can be reduced to admissible form. *Rowell v. BellSouth Corp.,* 433 F.3d 794, 800 (11th Cir. 2005).

a.    **Krish Shukla's deposition (Doc. 88-2)**

Richway moves to exclude Krish Shukla's deposition (Doc. 88-2), asserting that it is an uncertified incomplete deposition (lacking a signed reporter's certification attesting to the true and correct nature of the record of deponent's testimony) and fails to account for Shukla's Errata sheet.  (Doc. 92 at 3-4). Richway's motion is denied. Given the nature of the exhibit (a deposition), the Court finds that it could readily be authenticated and reduced to admissible form, and Richway offers no reason why Shukla's deposition testimony *cannot* be so reduced. See, e.g., Bates v. United States, 2015 WL 4999740, *3-4 n.7 (S.D. Ala. Aug. 21, 2015) (overruling an objection to deposition excerpts that were unauthenticated and uncertified because "at the summary judgment stage need not be authenticated or otherwise presented in admissible form; rather, they must be capable of being reduced to an admissible form at the time of trial[]"); *Johnson v. Mobile Infirmary Med. Ctr.,* 2015 WL 1538774, *1 (S.D. Ala. Apr. 7, 2015) (internal citations omitted) ("[i]t is well settled that exhibits are properly considered for summary judgment purposes as long as they may be reduced to admissible form at trial .... Mobile Infirmary does not suggest that these exhibits are incapable of being reduced to admissible form at trial; therefore, the 'lack of authentication" argument fails[]'"); *Abbott v. Elwood Staffing Servs., Inc.,* 44 F.Supp.3d 1125, 1135 (N.D. Ala. 2014) (emphasis in original) ("an objection cannot be based solely on evidence not being authenticated -- the objection must be that evidence *cannot* be presented in admissible form, not that the evidence *has not* been presented in admissible form[]"); *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008) ("The general rule in [the Eleventh] Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial[]"). Further, Richway has presented no evidence demonstrating that the deposition fails to accurately reflect the witnesses' deposition testimony.  See, e.g., LaVoie v. City of Albany, 2013 WL 1180793, *5 (M.D. Ga. Mar. 20, 2013) (noting that the defendant had provided no substantive basis for attacking the uncertified deposition excerpts on summary judgment, denying a motion to suppress).  Moreover, Glovis

submitted Shukla's certified deposition with Errata sheet with related summary judgment briefing (Doc. 99-1 at 186-193 (Dep. Shukla at 185 and Errata)), to which Richway raises no objection.  Thus, Richway's objection to Shukla's deposition is **OVERRULED.**

        **b.**        **Affidavit of Mike Kim (Doc. 88-1)**

Richway objects to the Court's consideration of Paragraphs 4-8 and 13 of the Affidavit of Mike Kim, asserting such should be disregarded on summary judgment as violative of Rule 56(c)(4).  (Doc. 92 at 4-6 (citing Doc. 88-1)).  As grounds, Richway asserts as follows: 1) Paragraph 4 is not supported by the evidence, is an ultimate issue assertion, is a conclusory statement, and is a legal conclusion; 2) Paragraphs 5-8 are ultimate issue assertions, conclusory statements, and legal conclusions unsupported by the evidence of record; and 3) Paragraph 13 fails to affirmatively show or demonstrate how Kim is competent to testify to the tax matters, contains inadmissible hearsay regarding statements/opinions received from Glovis' accountants, is not based upon Kim's knowledge or experience, and is unsubstantiated.

With regard to Richway's objections based on hearsay, knowledge, or experience, Kim's affidavit states and verifies that he has access to Glovis' business records as they relate to Richway and that he reviewed same in order to provide facts about which he has personal knowledge and an accurate summary of the records for the Affidavit.  (Doc. 88-1 (Aff. Kim at 1)).  A corporate representative's review of relevant financial records establishes the requisite personal knowledge to attest to same.  See, e.g., Lewis v. Residential Mortg. Solutions, 2018 WL 5276221, *4 (N.D. Ga. Aug. 31, 2018) (finding an affidavit as sufficient evidence to make out a prima facie case that the documents submitted are what they purport to be); Cargo Airport Servs. USA, LLC v. Transcarga Int'l Airways, C.A., Inc., 2017 WL 4898292, *2 (S.D. Fla. Oct. 27, 2017) (declaration admissible because it asserts the basis of the declarant's personal knowledge -- that he is Finance Director for the successor company and reviewed the relevant financial records -- "[a]n affidavit submitted by a corporate representative in support of summary judgment is properly considered when the corporate representative expressly verifies that the matters stated therein are

based on his own personal knowledge gained through review of business records[]"); Atl. Marine Fla., LLC v. Evanston Ins. Co., 2010 WL 1930977, *1-2 (M.D. Fla. May 13, 2010) (denying motion to strike declaration of corporate representative because the statements contained inadmissible hearsay and were not based on personal knowledge—corporate representative's review of business records established the requisite "personal knowledge").  Thus, these objections by Richway are **OVERRULED**.

Regarding Paragraphs 4-8, the exhibits attached to Kim's Affidavit support Kim's description of the delivery of trailers and Glovis' payments for same, and the evidence of summary judgment confirms that Glovis purchased the 12 trailers. (Doc. 88-1 at 1-19 (Aff. Kim at Ex. A thereto (The Lease) and Exs. A-1 through D-1 thereto (The Trailer Delivery Schedule))).  Thus, despite Richway's characterization, there are no ultimate issue assertions, conclusory statements, and/or legal conclusions rendered by Kim in these paragraphs, simply a description of what these documents state. Richway's objection to Paragraphs 4-8 is **OVERRULED.**   Concerning Paragraph 13, it is a synopsis of information Kim attests to have obtained from Glovis' accountants.  Rather than testifying as an expert in tax matters as Richway posits, Kim is merely referencing the invoices Glovis issued, which indicate the amounts remitted to the State of Alabama for taxes.  This is not opinion.  This does not require tax expertise, knowledge, or experience -- Kim is simply stating the information contained in Glovis' business records.  And such tax information can be reduced to an admissible form. Thus, Richway's objection to Paragraph 13 is **OVERRULED.**

c.   **Declaration of Freda Leng**

Richway seeks to exclude Leng's declaration and attachments claiming such is from a witness not identified in discovery under Rule 37(c), as irrelevant to the Glovis-Richway lease, hearsay, hearsay within hearsay, and was prejudicially not timely disclosed.  (Doc. 103 at 2-4).  The objection is **OVERRULED** as to the substantive statements in paragraphs 6, 7, and 8 (Doc. 101-1 at 3).  Otherwise the objection is **MOOT,** as the Court has not relied on any additional statements in the declaration or evidence attached thereto.

## 2.     **Breach of Contract**

To establish a breach of contract in Alabama, Glovis must show: 1) the existence of a valid contract binding the parties; 2) Glovis' performance; 3) Richway's non-performance; and 4) resulting damages. Univalor Trust, SA v. Columbia Petroleum, LLC, 2017 WL 2303999, *9 (S.D. Ala. May 25, 2017); Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala. 2009).

As framed on summary judgment, Glovis' breach of contract claim is as follows: The lease is a valid contract binding Glovis and Richway.  Based on the terms of the lease, Glovis performed by purchasing 12 trailers for Richway's use.  Richway's obligation to perform was to make monthly lease payments to Glovis for those trailers, commencing in June 2016 and thereafter, based on the delivery date schedule set by Glovis.  Starting in February 2018, Richway failed to make those payments and so breached the lease.  Glovis' alleged damages consist of the indebtedness of Richway (failure to pay the amounts due and owing to Glovis under the lease).  Per Glovis, Richway owes $372,555.50.

Richway's defense to Glovis' contractual claim is that any alleged amounts owed by Richway to Glovis under the lease were deducted from Glovis' outstanding payables owed to Richway under the separate rail/trucking services agreement.  (Doc. 69 at 3-5).  Thus, Richway is not in default.  Richway contends that there is no provision in the Richway-Glovis lease which prohibits Richway from taking a setoff as "its common law right[]" or evinces Richway's "voluntary relinquishment of its known common law right to setoff[,]" and that Richway did not waive such right.  (Doc.92 at 9).

### a.     **Set-off**

The Glovis-Richway lease provides as follows for Glovis:

Deduction
Glovis has the right to deduct or write-off any receivables from payables to Richway....after 30 days of due date.

(Doc. 102-1 at 63).  There is no similar clause for Richway.  Rather, Richway asserts it has a right to set-off under federal common law, Section 6-8-80 of the Ala. Code and based on a course of dealing.

First, Richway cites no authority, nor has any been found by the undersigned, that federal common law of contracts is applicable to Glovis' state law breach of contract claim brought in federal court pursuant to diversity of citizenship.  It is presumed that Richway's attempt to rely on federal common law is because it appears that there is no common law right to set-off under Alabama law.  Rather, set-off is a solely a statutory right.  Scroggins v. Alabama Gas Corp., 158 So. 2d 90, 95 (Ala. 1963) ("Recoupment is of common law origin, whereby setoff is entirely statutory....The subject matter of a plea of recoupment must arise out of the same transaction upon which plaintiff's claim is based. ...On the other hand, there is no prerequisite that a plea of setoff must arise out of the same transaction or contract[]") (internal citations omitted).

Second, the Alabama statutory right to set-off (on which Richway relies) is limited to claims reduced to judgments.  Specifically, Section 6-8-80 of the Ala. Code provides for setoff for *judgments* - that judgments may be set off against each other.  Under Alabama law, the set-off of mutual judgments, is a clear legal right, not dependent on the "grace of court" or equity.  Matter of Edwards, 553 B.R. 902, 910-911 (Bkrtcy. N.D. Ala. 2016) ("the right of setoff has been codified ... Ala. Code § 6–8–80 and nothing under that statute allows or directs courts to look behind the face value of judgments to determine the amount eligible for offset[]").

Moreover, while Richway is correct that set-off is "a fundamental right of any creditor," the right is asserted as a counterclaim, not as a defense.  Head v. Southern Dev. Co., 614 So. 2d 1044, 1046-1047 (Ala. 1993) ("[t]he right of set-off (i.e., the right of a defendant to assert a counterdemand against the plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action) is a fundamental right of any creditor[]") And as noted in Merchants' Bank v. Acme Lumber & Mfg. Co., 49 So. 782, 784 (Ala. 1909):

By pleading setoff, the defendant says to the plaintiff: It is true I owe you as you claim; but you owe me certain amounts, by independent obligations, so it is not just that you should insist on collecting from me, while I have a claim on which I could immediately sue you and recover....

Thus, because Alabama statutory law (at least that cited by Richway) limits set-off rights to claims reduced to judgment, Richway's assertion is premature.

Third, Richway claims an entitlement to setoff based on a history and prior dealings with Glovis --"course of dealing" per Ala. Code Section 7-1-303(b) -- to argue that Glovis has taken offsets or credits against Richway's invoices in the past, such that Richway can do the same now.  To the extent Richway relies upon any such course of dealing for the Glovis-Richway lease, such reliance appears misplaced.

On summary judgment Richway references Glovis' set off of Richway's payables in August 2016. Meeting minutes indicate that on August 1, 2016, Richway (Richardson) and Glovis (Kim and Garvin) met to discuss the payment process for Glovis leasing the 12 trailers to Richway (from Glovis' perspective).  (Doc. 102-1 at 81-82 (Meeting Minutes).  The minutes state that Richway agreed that Glovis has the right to deduct or write-off any monthly lease receivables from payables for Richway (for Transportation services).  As noted *supra*, the Glovis-Richway lease expressly provides that Glovis may specifically write off or deduct any payables from Richway. So, Glovis' action in this regard appears to be an invocation and application of the Glovis-Richway lease write-off provision, not an extra-contractual act (course of dealing). The only other evidence Richway cites is Glovis' setoff on June 14, 2018 for Richway's rail invoices to clear the January 2018 lease payment due for the trailers (that Glovis credited Richway for a lease payment in lieu of paying Richway's bill for those rail services).  (Doc. 92 at 22-23). Again, this is simply Glovis' invocation and application of its contractual right to set-off. Richway can not rely on invocation of a contractual right  to establish prior course of dealing.

Based on the foregoing, the Court finds that Glovis has established the absence of genuine issues of material fact for the following: 1) the lease is a valid contract binding Glovis and Richway; 2), Glovis

performed by purchasing 12 trailers for Richway's use; 3) Richway's obligation to perform was to make monthly lease payments to Glovis for those trailers, but in January 2018, stopped making those payments and breached the lease; and 4) Glovis was damaged by Richway's failure to pay the amounts owed under the lease.  Accordingly, the Court finds as a matter of law that Richway breached the contract such that Glovis' motion for summary judgment on this claim, as to Richway's contractual liability, is **GRANTED**.

### b.    <u>Damages</u>

Glovis also seeks summary judgment on the amount of damages, excluding attorneys' fees. Based on the (4) year Glovis-Richway lease, Glovis arranged to pay Transcraft $451,436.32 for the 12 trailers, starting in June 2016 and ending in June 2020.  Per the lease, Richway agreed to pay Glovis $10,930/month for 48 months.  Glovis also paid $24,920.64 in state taxes. Richway began making payments in June 2016, but stopped in January 2018.  In June 2018, the buy-out amount for the lease was approximately $360,000 for Richway, and Glovis agreed to one month's payment being set off.  Per Glovis, Richway has only paid $172,904.64 through payments from Richway or set-off by Glovis.  Glovis seeks to recover $372,555.50 from Richway, for all past due/remaining rental payments (January 2018 to December 2020) plus pre/post judgment interest. (Doc. 58 at 4).

In response, Richway disputes that it owes any sums to Glovis based on its set-off contentions, and moreover, that any taxes charged by Glovis were improperly assessed and attorney fees are not owed. As to set-off, Richway submits the set-off sum as specified in its counterclaim against Glovis, through which Richway contends Glovis owes $226,833.32 (related to the rail services agreement) plus $381,701.33 (related to the trucking services agreement).  (Doc. 92 at 17).  Based on the dispute regarding set-off (neither Glovis nor Richway moved for summary judgment on Richway's counterclaim), the issue of damages is carried to trial.  With the exception of the following determinations as a matter of law as to taxes, Glovis' motion for summary judgment as to the amount of breach of contract damages is **DENIED.**

22

**3.    Attorneys' Fees**

Glovis claims entitlement to attorneys' fees under the terms of the lease, specifically the Indemnity paragraph contained therein. (Doc. 88).  Richway moves for summary judgment on Glovis' claim for attorneys' fees, arguing that the lease agreement does not provide for attorneys' fees.  Richway is correct.

As noted by the Eleventh Circuit in McMahan v. Toto, 256 F.3d 1120, 1132 (11th Cir. 2001), the Supreme Court has held that: "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court....state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." (citing Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 259 n. 31 (1975)). "Alabama follows the 'American rule,' whereby attorney fees may be recovered if they are provided for by statute or by contract...." Jones v. Regions Bank, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); Hartford Acc. & Indem. Co. v. Cochran Plastering Co., Inc., 935 So.2d 462, 472 (Ala. Civ. App. 2006) (citations omitted) (same).

Glovis relies on the lease's indemnity paragraph, which provides: "Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including reasonable attorney's fees and costs, arising out of, connected with, or resulting from Lessee's use of the Equipment, including without limitation the manufacture, selection, delivery, possession, use, operation, or return of the Equipment." (Doc. 102-1 at 64).  Despite Glovis' characterization, the clear and unambiguous indemnity paragraph provides for indemnification as to *third-party* liability/claims, not as applied to any claims between the contracting parties to the agreement (Glovis and Richway). As explained in Tull Bros. Inc. v. Peerless Products, Inc., 953 F.Supp.2d 1245, 1257-1258 (S.D Ala. 2013):

> Express indemnity agreements are contractual provisions in which one party to the contract agrees to pay costs incurred by the other party to the contract as a result of the other party being held liable to a third party or having to defend against a claim filed by a third party. *See, e.g., Cochrane Roofing & Metal Co., Inc. v. Callahan*, 472 So. 2d 1005, 1008 (Ala. 1985).

Moreover, while Glovis references a trucking services agreement and an attorneys' fee clause within same, (Doc. 101 at 5-6), Glovis has failed to show how the trucking services contract is relevant to any ability to recover such fees under the Glovis-Richway lease.  Glovis has not alleged that Richway breached the trucking services agreement.  Thus, Glovis has shown no entitlement to attorneys' fees based on Richway's breach of the Glovis-Richway lease.  Richway's motion as to Glovis claim for attorneys' fees is **GRANTED**.

### 4.   <u>Taxes</u>

Richway first contends that Glovis cannot raise a claim for sales tax paid for the first time on summary judgment.  However, Glovis' claim for taxes is part of the damages tied to its breach of contract claim against Richway. Such claim for damages is not a separate count/claim. Thus, Richway's objection is without merit.

Richway next contends that Glovis did not purchase the trailers, that the arrangement was not a lease and thus Glovis was not allowed to charge Richway taxes. In short, Richway disagrees that Glovis' tax payments were correct based on the arrangement Richway contends existed (i.e. a finance agreement as opposed to a lease agreement).

First, Richway's contention that the agreement was not a lease agreement for which sales tax was owed is contradicted by the written contract.  The contract indicates the arrangement is an equipment lease, with the equipment not to be returned at the expiration of the contract.[12]  The contract indicates Glovis owns the equipment and is the lessor.  And the lease contract clearly provides that Richway owes **all** sales taxes assessed against it or Glovis (related to the equipment).  There is no dispute that Glovis

---

12 It appears that the parties used a "true" lease agreement and then awkwardly inserted "not" in the provision regarding the return of the equipment. (Doc. 88-1 at 9). This provision can now only be construed to mean that if Richway fulfilled the terms of the agreement, Richway would keep the equipment.  This effectively made the "true lease" agreement a "conditional sales lease." According to the Alabama Department of Revenue, sales tax is owed on a "conditional sales lease." <u>See</u> https://revenue.alabama.gov/sales-use/taxes-administered/rental-or-leasing-tax/, last visited on June 30, 2020.

collected sales tax on each payment made by Richway and remitted that tax to the relevant taxing authority for state, county, and city sales taxes. Tax was noted on invoices paid (through January 2018), and these amounts were remitted to the State of Alabama. Apparently, Richway did not object to the invoices that included the sales tax, and paid said invoices through January 2018.

Likewise, sales tax was included on invoices issued but not paid (February 2018 through April 2020). Despite the fact that Richway ceased making payments under the lease in January 2018, Glovis has continued to remit sales tax payments to the requisite taxing authorities. It is these taxes that Glovis seeks to recover as part of their breach of contract damages. Glovis contends that it relied on guidance from the Alabama Department of Revenue in charging sales tax on the lease.

Richway contends that Glovis' reliance on guidance from the Alabama Department of Revenue is misplaced because Glovis did not provide the correct information to the Alabama Department of Revenue. Richway misses the point. The contract clearly provides that Richway owes **all** the taxes assessed. The contract does not provide that Richway owes only the taxes that they believe were properly and accurately assessed and paid. If Richway believes taxes were not owed, the relief for Richway, if any, is with the Alabama Department of Revenue. Richway's motion for summary judgment regarding taxes is **DENIED.**

## B.    Richway and RAEL's Partial MSJ: Conversion and Fraud

At the outset, Richway and RAEL's partial motion for summary judgment is premised on inaccurate, yet claimed, "undisputed facts" surrounding the Glovis-Richway lease, including: that the lease was a capital lease, that Glovis entered into any lease to finance both defendants' purchase as 12 trailers, that Glovis intended to finance Richway and RAEL's purchase of the trailers, that Glovis had "full knowledge" of Richway and RAEL's actions, that "[n]o evidence exists so much as even implying that Defendants withheld any information or engaged in conduct subversive to open and honest dealing[,]" and more. (Doc. 102 at 1-2). These are clearly disputed facts, and moreover, facts for which there is evidentiary support favoring Glovis -- i.e., a jury could find in Glovis' favor on these issues.

1.    **Conversion**

In Count IV of the Amended Complaint, Glovis alleges a conversion claim against Richway and RAEL.  (Doc. 58 at 6-7).  Glovis specifically alleges the following: 1) RAEL wrongfully applied for and was granted title to the equipment, wrongfully claims ownership of the equipment, wrongfully took possession of title to the equipment even though Glovis paid for it and only leased it to Richway, wrongfully exercised domain and control over the equipment, wrongfully refused to pay Glovis the cost of the property, and acted in concert with Richway to convert Glovis' property for its benefit; 2) Richway wrongfully claims the equipment is owned by RAEL, wrongfully exercised domain and control over the equipment, wrongfully refused to pay Glovis the amounts due under the lease and/or the cost of the property, and acted in concert with RAEL to convert Glovis' property for its benefit.  (Id.)

In response, per Defendants: "(1) the subject property never belonged to Glovis; (2) Glovis had no possessory rights with respect to the subject property; and (3) Defendants did not engage in any wrongful or illegal acts with respect to their ownership, possession, and/or control of the trailers."  (Doc. 102 at 13).

On summary judgment, Defendants argue that Glovis' conversion claim fails because essential elements for said cause of action do not exist.  The Court disagrees.  "To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse." Ott v. Fox, 362 So. 2d 836, 839 (Ala. 1978).  Glovis has presented evidence to withstand summary judgment on this issue.  Per the lease, Glovis was the owner of the equipment, Glovis was entitled to possession upon Richway's default, and the agreement governed the relationship between Glovis and Richway to the specific exclusion of anything else (merger clause).  Moreover, Glovis has presented evidence that it paid for the equipment.  Accordingly, Richway's motion for summary judgment on the conversion claim is **DENIED**.

2. **Fraud**

In Count V of the Amended Complaint, Glovis alleges fraud as follows: 1) RAEL represented to Glovis that it owned and had title to the equipment; 2) RAEL falsely represented its ownership of the equipment when it applied for title and when it represented to Glovis that it was the owner; 3) Defendants acted in concert to conceal their actions of taking title/ownership of Glovis' property for their own benefit; 4) because RAEL did not pay for the equipment it knew or should have known it was falsely representing its ownership when it applied for title and when it represented to Glovis that it was the owner; 5) Glovis relied on Richway's representations in the lease agreement as to payment for the equipment; 6) Glovis would not have purchased the equipment for use by Richway had it known RAEL would wrongfully take title; and 7) due to the misrepresentations, Glovis is unable to obtain title to the equipment and cannot recover the equipment or its value.  (Doc. 58 at 8-9).

Glovis explains its fraud claim further on summary judgment: "based upon the duties and obligations as set forth in the Lease Agreement ... the parties had agreed that Glovis was the owner and title holder to the equipment...Defendants' ignoring the Lease Agreement to title the equipment in the wrong name all the while placating Glovis that Defendants would correct the title issues. Indeed, it now appears that Defendants never had any intention of fulfilling the terms of the Lease Agreement and defrauded Glovis into funding Defendants use of the equipment."  (Doc. 106 at 12).

Defendants argue that the two-year statute of limitations bars Glovis' fraud claims. Specifically, that while Glovis initiated this action in state court on November 12, 2018, it did not allege fraud until July 25, 2019 via filing an amended complaint and thus, is outside of Alabama's statute of limitations governing fraud because Glovis knew or should have known about the surrounding fraud facts in 2016.

27

Fraud claims in Alabama are subject to a two-year statute of limitations, Ala. Code Section 6-3-38(l).[13]  *See, e.g., Auto Owners Ins. Co. v. Abston*, 822 So.2d 1187, 1194 (Ala.2011); *Farr v. Gulf Agency, 2011 WL 2420844, \*4 (Ala.2011)*. This statute of limitations is subject to the "saving clause" provided by § 6–2–3 which provides that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." *See, e.g., Ex parte Seabol*, 782 So.2d 212, 216 (Ala.2000). Section 6–2–3 supplies an objective test, tolling the statute of limitations on a fraud claim until the aggrieved party discovers or, in the exercise of reasonable care, should have discovered, the facts constituting the fraud. *Id. at 216*. *See also Foremost Ins. Co. v. Parham*, 693 So.2d 409, 421 (Ala.1997). The limitations period commences when the plaintiff discovers the fraud or when facts are known "which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry." *Abston*, 822 So.2d at 1195. "Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered." *Gonzales v. U–J Chevrolet Co.*, 451 So.2d 244, 247 (Ala.1984).  Additionally, if a plaintiff establishes fraudulent concealment tolling, "the limitations period commences once the fraud is readily discoverable or the potential plaintiff is on notice that fraud may have been perpetrated." *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1043 (11th Cir. 1986) (citing *Johnson v. Shenandoah Life Ins. Co.*, 281 So. 2d 636, 642–43 (Ala. 1973)). "Facts that would provoke a reasonable person's inquiry and lead to a discovery of the fraud commence the limitation period." *Id.* (citing *Butler v. Guar. Sav. & Loan Ass'n*, 37 So. 2d 638 (Ala. 1948)). As summarized by J&M Assoc. v. Callahan, :753 F.Supp.2d 1183, 1214 (S.D. Ala. Nov. 12, 2010):

---

13 *See Ala.Code* § 6–3–38(l) (providing that "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years[ ]")."

28

"The question of when a plaintiff discovered or should have discovered an alleged fraud, for statute of limitations purposes, is generally one for the jury." *Id.* (citing *Ex Parte American General Finance, Inc.,* 795 So.2d 685, 689 (Ala.2000)). "However, the Alabama Supreme Court has recognized that, under certain circumstances, this question may be decided as a matter of law." *Id.* " 'A party will be deemed to have "discovered" a fraud as a matter of law upon the first of either the actual discovery of the fraud or when the party becomes privy to the facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud.' " *Jones v. Kassouf & Company, P.C.,* 949 So.2d 136, 140 (Ala.2006) (quoting *Dickinson v. Land Developers Construction Co.,* 882 So.2d 291, 298 (Ala.2003)). The Alabama Supreme Court described this *Foremost* objective standard as follows:

> The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud. This Court has explained that it is the knowledge of such *facts* that would have alerted a reasonable person to the existence of a potential fraud, and *not actual knowledge of the fraud itself,* that determines whether the question of the tolling of the limitations period in a fraud case [under § 6–2–3] can be decided as a matter of law. As a corollary to this rule, we have held that fraud is discoverable as a matter of law for the purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered.

*Ex Parte American General Finance, Inc.,* 795 So.2d at 689–690 (internal quotations and citations omitted; last emphasis added).

In support of their statute of limitations argument, Defendants reference documentation which they assert establishes RAEL's ownership of the trailers, and from that, claim that those documents placed Glovis on notice of the facts of the fraud alleged to start the statute running.  Defendants' documentation (7/13/16 MSO certificate email and 9/27/16 MSO certificates), indicate that they placed Glovis on notice that the trailers had been registered/titled in the name of RAEL, not Glovis.

These documents were provided to Glovis; however, the July 2016 "notice of fraud" is disputable. At best, these documents constitute facts or circumstances which *may* have prompted Glovis to question the registration/titling of the trailers in RAEL's name as of 7/13/16 and/or 9/27/16, instead of its own.

Glovis' explanation is as follows:  "Glovis was not aware of the significance of the MSOs and had no reason to believe that Defendants would seek to improperly title the equipment in RAEL's name –

particularly since the Lease Agreement prohibited such action." (Doc. 106 at 13).  The evidence, in a light most favorable to Glovis, indicates that Glovis first realized the title error in March 2017 and requested that Defendants correct the title to reflect ownership in Glovis' name.  Glovis contends Richway led them to believe the error would be corrected.  Glovis continued to make this request through October 2017.  It was not until January 2018, when Richway ceased making payments, that Glovis realized it had been defrauded.  The Court finds that there is an issue of fact for trial as to whether there were sufficient facts, prior to July 2017, to have alerted a reasonable person to the existence of a potential fraud.

Defendants also assert there is no fraud "because it has not identified a single false representation made by Defendants. Moreover, while Glovis' pleading alleges reliance on representations made by Defendants, such representations were true, and Glovis' alleged reliance was neither reasonable nor give rise to damages." (Doc. 102 at 13).

Glovis appears to allege two (2) types of fraud: fraudulent misrepresentation and fraudulent concealment.  In Alabama, "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala.Code § 6–5–101. To recover on a claim of fraudulent misrepresentation, Glovis must establish: 1) a false representation/statement; 2) concerning a material existing fact; 3) which it relied upon by the plaintiff; 4) who was damaged as a proximate result of reliance on same. See, e.g., *Southland Bank v. A & A Drywall Supply Co.,* 21 So.3d 1196, 1210 (Ala.2008); *Ex parte Novartis Pharms. Corp.,* 991 So.2d 1263, 1275 (Ala.2008); *McCutchen Co., Inc. v. Media Gen., Inc.,* 988 So.2d 998, 1001 (Ala.2008); *Fisher v. Comer Plantation, Inc.,* 772 So.2d 455, 463 (Ala.2000).

To recover for fraudulent concealment, Glovis must establish that: 1) the defendant had a duty to disclose a material fact; 2) that the defendant either failed to disclose or concealed that material fact; 3) that the defendant's failure to disclose or its concealment of that material fact induced the plaintiff to act or to refrain from acting; and 4) that the plaintiff suffered damage as a result of its action, or inaction,

induced by the defendant's failure to disclose or its concealment of the material fact. *Soniat v. Johnson-Rast & Hays*, 626 So. 2d 1256, 1258–59 (Ala. 1993).

A plaintiff's purported reliance in an action alleging misrepresentation or suppression must be reasonable: "'[T]he right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances.'" *Sandoz, Inc. v. State,* 100 So.3d 514, 527 (Ala.2012) (quoting *AmerUs Life Ins. Co. v. Smith,* 5 So.3d 1200, 1207 (Ala.2008)).

The Court finds that Glovis has presented sufficient evidence to withstand summary judgment on its fraud claim.  Accordingly, Richway's motion is **DENIED**.

## V.  **Conclusion**

It is **ORDERED** that Glovis' motion for summary judgment (Doc. 88) is **GRANTED** as to Richway's liability for breach of contract, and **DENIED** as to amount of damages; 2) Richway's motion for summary judgment (Doc. 93) is **GRANTED** as to attorneys' fees and **DENIED** as to taxes; 3) Richway-RAEL's motion for summary judgment (Doc. 102) is **DENIED** as to Glovis' conversion claim and as to Glovis' fraud claims.

**DONE** and **ORDERED** this the **3rd** day of **July 2020.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**